## Seiver v. Ludington, Trustee

*Edward B. Duffy*, for plaintiff.
*High, Swartz, Flynn & Roberts*, for defendant.

FORREST, J., October 31, 1951.—Plaintiff filed this bill seeking specific performance of a certain written contract between the parties hereto, wherein defendant agreed to sell and plaintiff agreed to buy a certain tract of land situate in the Township of Lower Merion, Montgomery County, Pa.

Defendant filed his answer, admitting the contract but alleging that plaintiff was in default in refusing to make settlement unless all the taxes on the whole tract, of which the involved parcel is a part, were paid.

From the admissions in the pleadings and from the evidence are made the following

### Findings of Fact

1. On February 15, 1951, plaintiff and defendant entered into a written contract wherein defendant agreed to sell and plaintiff agreed to buy for $6,000, a certain parcel of ground situate on the westerly side of Mt. Pleasant Road, north of Arrowmink Road, Lower Merion Township, Montgomery County, Pa.

2. Paragraph 2 of the agreement of sale provides in part: "The premises are to be conveyed free and clear of all liens, encumbrances and easements."

3. Paragraph 9 provides:

"In the event the Seller is unable to give a good and marketable title or such as will be insured by any reputable Title Insurance Company, as above set forth, Buyer shall have the option of taking such title as the Seller can give without abatement of price, or of being repaid all monies paid on account by Buyer to Seller and the Buyer shall also be reimbursed for any Title Company charges incurred; and in the latter event there shall be no further liability or obligation by either of the parties hereunder and this agreement shall become null and void."

4. Defendant, as trustee, held legal title to the tract and had the authority to contract for its sale.

5. The parties met at the Commonwealth Title Company, 1510 Walnut Street, Philadelphia, Pa., on May 4, 1951, at 2 p.m. for settlement.

6. The tax bills had not been issued on the aforesaid date, although the 1951 taxes had been levied.

7. The grantor refused to clear from the title certificate the exception of the lien of the 1951 taxes, either by letter guaranteeing payment to the title company, or payment thereof, the alternate requirements set down by the title company for the issuance of a clear certificate.

8. Plaintiff was ready, willing and able to make settlement and in fact, did pay into the title company the amount required.

9. Plaintiff refused to settle unless the exception as to taxes was removed from the certificate.

10. The duly authorized agent for defendant who attended the settlement, knew that it was his obligation to remove the 1951 tax exception from the title certificate and knew that he could have removed the same.

11. The duly authorized agent for defendant arbitrarily refused to make settlement because the attorney for plaintiff "irritated" him.

12. The purchase price being $6,000, and plaintiff having deposited $600 on account thereof; and, there being charges against plaintiff of $38.30 on account of tax adjustment and 50 cents acknowledgment, there is due defendant the sum of $5,438.80, upon his executing and delivering a good and sufficient deed.

### Question of Law Involved

Where an agreement for the sale of real estate provides: "In the event the Seller is unable to give a good and marketable title or such as will be insured by any reputable Title Insurance Company, as above set forth,

Buyer shall have the option of taking such title as the Seller can give without abatement of price, or of being repaid all monies paid on account by Buyer to Seller and the Buyer shall also be reimbursed for any Title Company charges incurred; and in the latter event there shall be no further liability or obligation by either of the parties hereunder and this agreement shall become null and void", can the seller refuse to meet the requirements of the title company in the alternative, for the removal of the tax lien exception, by either: (a) Paying the amount of the tax into the settlement, or (b) giving the title company a letter guaranteeing payment; and thus throw the buyer onto the options specified in that section and deprive him from the remedy of specific performance?

Defendant contends in the affirmative; plaintiff in the negative.

### Discussion

The two pertinent and all-important paragraphs of the agreement between the parties are paragraph 2, which provides that "the premises are to be conveyed free and clear of all liens", and the above-quoted paragraph 9, which provides that if the seller "is unable to give a good and marketable title" then the buyer is thrown upon one of two options, not including the right to specific performance; thus, he is precluded from bringing a bill in the event that the seller is unable to comply. There was a 1951 tax exception on the title certificate, since although the tax bills were not yet issued, the taxes had been levied and therefore, they became a lien on the premises. A citation for this conclusion is not necessary, particularly because defendant admits this result. Thus, when defendant refused to clear the exception from the title certificate by either paying the taxes or giving a letter guaranteeing the payment thereof, either of which he certainly could

have done, he was not acting in compliance with the aforesaid paragraph 2, unless he is saved by the provision of paragraph 9, which excuses him in a case where he is "unable" to give him a good title. However, this paragraph does not save him, since he was not "unable" but on the other hand he was *able* to remove the exception, if he were so inclined.

Mr. Markeim, the duly authorized agent of defendant, who attended the settlement, divulges the apparent reason why he did not go through with the settlement, at page 71 in the notes of testimony:

"Q. Mr. Markeim, with all your experience attending these settlements, don't you think you could have gone back to Mr. Schmidt and arranged to have him remove that objection on the title certificate?

"A. Mr. Duffy, I presume you could do almost anything, but when somebody irritates you and takes an arbitrary attitude, I have found that the only way to counteract that is to do the same thing."

Such "inability" cannot be founded on one's own caprice. Paragraph 9 was not intended to give the seller a "loophole" or "exit" when his own whim is the only thing which stands in the way of his compliance: Logan v. Russell, et al., 66 Montg. 322, 324 (1950), where Knight, P. J., appropriately pointed out:

"An examination of paragraph seven discloses that if the sellers are unable to give a good and marketable title, then the remedy of the buyer is limited to a return of the down money, together with necessary expenses. Paragraph seven does not cover cases in which the sellers, although able to deliver a good title, deliberately default and refuse to carry out their agreement."

*Conclusions of Law*

1. Equity has jurisdiction.

2. A valid and binding agreement of sale existed between plaintiff and defendant.

3. Defendant is obligated under the agreement of sale to convey the premises described therein to plaintiff free and clear of all liens, encumbrances and easements.

4. There exists against the premises a lien for 1951 taxes.

5. Defendant is obligated under the agreement of sale to discharge the lien of the 1951 taxes.

6. Defendant having failed, although able, to discharge the lien, is in default and has breached in this regard his obligation to plaintiff under the agreement of sale.

7. Plaintiff is entitled to the conveyance of the premises from defendant in accordance with the terms of the agreement of sale.

8. Defendant should pay the costs.

9. The following decree nisi should be, and now is, entered:

And now, October 31, 1951, it is ordered, adjudged and decreed that a mandatory injunction issue to defendant, Nicholas S. Ludington, trustee, directing him to execute a deed, in the usual fee simple form, to plaintiff, Lawrence M. Seiver, for the property described in the ninth paragraph of the bill, upon tender by plaintiff of the sum of $5,438.80, purchase price provided for in the agreement of sale, as adjusted.

It is further ordered, adjudged and decreed that the costs shall be paid by defendant.

Prothonotary is directed to mark these findings of fact and conclusions of law filed, thereafter to become part of the record in this case, and to give counsel in the case notice as required by the Rules of Equity practice, that unless exceptions thereto are filed within 10 days, the decree entered nisi shall be entered as a final decree as of course.